No. 26-4872

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

S.D. and J.F., individually and on behalf of all others similarly situated,

Plaintiffs-Appellees,

v.

MIKE REESE, et al,

Defendants-Appellants.

JOHN DOES, 1-5,

Defendants.

_____

APPELLANTS' EMERGENCY MOTION FOR STAY

**Emergency Motion Under Circuit Rule 27-3
Relief Requested by August 20, 2026**

_____

Appeal from the United States District Court
for the District of Oregon

_____

DAN RAYFIELD  #064790
Attorney General
PAUL L. SMITH  #001870
Solicitor General
ROBERT A. KOCH  #072004
Attorney-in-Charge,
Civil & Administrative Appeals
ARIEL T. ASHTAMKER  #260068
Assistant Attorney General
1162 Court St. NE
Salem, Oregon 97301-4096
Telephone:  (503) 378-4402
ariel.ashtamker@doj.oregon.gov
Attorneys for Appellants

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form16instructions.pdf*

**9th Cir. Case Number(s)** | 26-4872

**Case Name** | S.D., et al. v. Mike Reese, et al.

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

> (1) A stay of the preliminary injunction pending appeal and an administrative stay of the preliminary injunction pending resolution of the emergency stay motion. (2) A stay of the district court proceedings pending appeal and an administrative stay of those proceedings pending resolution of the emergency stay motion. (3) Expedited briefing and consideration of this appeal.

Relief is needed no later than *(date)*: 8/20/2026

The following will happen if relief is not granted within the requested time:

> (1) The state is under threat of contempt while it attempts to comply with the vague and overbroad terms of a mandatory preliminary injunction.
> (2) The state will need to disclose an unredacted list of all transgender Adults-in-Custody (AICs) without their consent. Plaintiffs have requested unredacted information about transgender AICs' health, disciplinary records, grievances, and Prison Rape Elimination Act (PREA) complaints. On July 24, 2026, the district court ordered the state to produce that information, which "personally identifies the transgender inmates in ODOC custody." Dkt.69. Although there is no discovery schedule in place, and the court did not set a production deadline, Plaintiffs have asked the state to turn over those records.

I could not have filed this motion earlier because:

> The district court had planned to schedule an evidentiary hearing to ensure that its mandatory preliminary injunction is PLRA-compliant. On July 24, 2026, the court ordered the state to produce "discovery that personally identifies the transgender inmates" without any deadline. Plaintiffs requested those records on July 28, 2026, and the state filed the NOA and this motion as soon as it could.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16**      *1*      *Rev. 11/21/2019*

I requested this relief in the district court or other lower court: ⦿ Yes ○ No

If not, why not:

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ⦿ Yes ○ No

If not, why not:

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: 7/29/2026

By *(method)*: Email

Position of other parties: Oppose

Name and best contact information for each counsel/party notified:

John D. Burgess, johnburgess@civilrightsoregon.com
Carl Lee Post, carlpost@civilrightsoregon.com
Abby Greenfield, abby@kedwards-law.com

I declare under penalty of perjury that the foregoing is true.

**Signature** /s/ Ariel T. Ashtamker    **Date** 7/31/2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16**                    2                    *Rev. 11/21/2019*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................2

ARGUMENT..................................................................................................5

    I.     Defendants are likely to succeed on the merits of their
           appeal. .............................................................................................6

         A.     The district court abused its discretion by issuing a
              mandatory preliminary injunction. ....................................... 6

              1.     The district court clearly erred when it found
                      that ODOC has a "default presumption" of
                      housing transgender women AICs in men's
                      prisons....................................................................... 7

              2.     The district court improperly placed the burden
                      of proof on defendants............................................. 14

              3.     The terms of the district court's mandatory
                      preliminary injunction conflict with the PLRA
                      because they are vague and overbroad.................... 15

         B.     The district court necessarily abused its discretion by
               provisionally certifying the class. ...................................... 20

    II.    The remaining stay factors favor defendants. ...............................21

    III.   A stay of the district court proceedings pending appeal is
          also appropriate in this case. ........................................................21

    IV.   This Court should issue an administrative stay of the order
          and district court proceedings pending the resolution of this
          motion and expedite the briefing schedule and its
          consideration of this appeal...........................................................23

CONCLUSION...............................................................................................24

i

# TABLE OF AUTHORITIES

## Cases Cited

*Alabama-Tombigbee Rivers Coal. v. Kempthorne*,
477 F.3d 1250 (11th Cir. 2007).....................................................................13

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014).........................................................................7

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026)........................................................ 18, 22

*Fraihat v. U.S. Immigr. & Customs Enf't*,
16 F.4th 613 (9th Cir. 2021).........................................................................20

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015)......................................................... 7, 8, 14

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999)........................................................................12

*Melendres v. Skinner*,
113 F.4th 1126 (9th Cir. 2024).....................................................................15

*NetChoice, LLC v. Bonta*,
170 F.4th 744 (9th Cir. 2026).......................................................................14

*Nken v. Holder*,
556 U.S. 418 (2009) ...............................................................................6, 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022).........................................................................20

*Oregon v. Trump*,
154 F.4th 1161 (9th Cir. 2025).....................................................................23

*Porretti v. Dzurenda*,
11 F.4th 1037 (9th Cir. 2021)........................................................................19

*Reach Cmty. Dev. v. U.S. Dep't of Homeland Sec.*,
174 F.4th 1143 (9th Cir. 2026).....................................................................21

*San Luis Obispo Coastkeeper v. County of San Luis Obispo*,
161 F.4th 590 (9th Cir. 2025)........................................................................7

*Shields v. United of Omaha Life Ins. Co.*,
50 F.4th 236 (1st Cir. 2022) .........................................................................14

*Siewe v. Gonzales*,
480 F.3d 160 (2d Cir. 2007) .................................................................12

*Simon v. City & County of San Francisco*,
135 F.4th 784 (9th Cir. 2025).................................................................18

*Tourgeman v. Nelson & Kennard*,
900 F.3d 1105 (9th Cir. 2018).................................................................15

*Turner v. Safley*,
482 U.S. 78 (1987) .................................................................................18

*United States v. Barnes*,
895 F.3d 1194 (9th Cir. 2018)................................................................13

*United States v. Texas*,
144 S. Ct. 797 (2024) .............................................................................24

*Valentine v. Collier*,
956 F.3d 797 (5th Cir. 2020)..................................................................19

*Winter v. Nat. Res. Def. Council*,
555 U.S. 7 (2008) ...................................................................................14

*Woodford v. Ngo*,
548 U.S. 81 (2006) .................................................................................19

## Constitutional and Statutory Provisions

18 U.S.C. § 3626(a)(2).................................................................... 19, 24

Or. Rev. Stat. 179.495..................................................................................15

U.S. Const., Amend. VIII ......................................................... 2, 4, 7

U.S. Const., Amend. XIV ..............................................................2, 8

## Other Authorities

Fed. R. Civ. P. 23.......................................................................................20

Fed. R. Civ. P. 65(d) ................................................................................15

Michael J. Saks,
*Trial Outcomes and Demographics: Easy Assumptions Versus Hard*
*Evidence*, 80 TEX. L. REV. 1877 (2002) .................................................12

iii

## APPELLANTS' EMERGENCY MOTION FOR STAY
_____

### INTRODUCTION

Defendants-Appellants—Mike Reese, Ryan LeGore, Jeremy Wagner, Mark Nooth, Erin Reyes, and the State of Oregon—respectfully request a stay of the district court's mandatory preliminary injunction pending appeal and an immediate administrative stay of that injunction pending resolution of this motion. Defendants also request a stay of the district court proceedings pending appeal and an immediate administrative stay of those proceedings pending resolution of this motion. Defendants further request expedited briefing and consideration of their appeal of the district court's preliminary injunction and provisional class certification.

The Oregon Department of Corrections ("ODOC") determines housing placements for transgender Adults-in-Custody ("AICs") through individualized assessments. Those assessments consider several factors, including each AIC's health, gender identity, history, and safety, while also balancing institutional security and the safety of other AICs.

The district court, however, found that ODOC has a default presumption of housing transgender women AICs in men's facilities. The court so found, despite ample evidence in the record showing that ODOC has no such presumption, based solely on the statistical total number of transgender women

currently housed in men's facilities across the state. With only the thread of that clearly erroneous factual finding, the court issued a mandatory preliminary injunction under the Eighth Amendment that micromanages the state's administration of its prison system for transgender women AICs under terms both vague and overbroad. The court also provisionally certified a class of all transgender women in ODOC custody and then ordered the disclosure of their personal information otherwise protected by Oregon law—including their names and gender identities—without their consent to the individual named plaintiffs' counsel.

Defendants must now try to comply with the injunction's vague and overbroad terms under threat of contempt. And although the district court has yet to set a discovery schedule, plaintiffs have already demanded that defendants disclose the certified class members' confidential information. This Court's emergency intervention is necessary.

## BACKGROUND

Plaintiffs J.F. and S.D. filed a class action complaint against defendants alleging violations of the Eighth Amendment, Fourteenth Amendment, and the Oregon Constitution. *See* Dkt.1, at 29–34. Plaintiffs centrally alleged that ODOC "routinely classifies and houses transgender women solely on the basis

of their genitalia, without genuine consideration of gender identity or safety."
*Id.* at 2–3.

Plaintiffs moved for injunctive relief, submitting declarations from Plaintiff J.F. and three anonymous transgender women AICs in support of the motion. *See* Dkt.15–19.[1] Plaintiffs acknowledged that ODOC's existing policies establish individualized assessments for housing transgender AICs but argued that "ODOC's actual practice is to house transgender women by birth sex or genitalia." Dkt.15, at 11. Plaintiffs also requested that the district court provisionally certify a class of "all current and future transgender women in ODOC custody." Dkt.15, at 54.

Defendants opposed the motion and submitted evidence showing that, consistent with its own policies, ODOC conducts individualized assessments to determine housing for transgender women AICs on a case-by-case basis. Dkt.26, 27–29, 42. That evidence also showed that ODOC does not determine housing placements by genitalia and, instead, considers a variety of factors— including a transgender AIC's own views about their safety—when deciding housing placements. Dkt.27–29. Out of concern and respect for the privacy of each individual AIC, defendants endeavored not to disclose individualized

---

[1] Plaintiff S.D., who is no longer in ODOC custody, did not submit a declaration. *See* Dkt.45, at 9 n.1.

evidence and information that might reveal the identity of transgender women AICs who had not made themselves a party to the litigation.

On April 28, 2026, the district court provisionally certified a class and issued a mandatory preliminary injunction based on plaintiffs' Eighth Amendment claim.  Dkt.45.  Based solely on the aggregate number of transgender women AICs in men's prisons, the court found that ODOC has a "default presumption" for housing transgender women AICs in men's prisons. Dkt.45, at 2, 20–22.  The court therefore ordered defendants, among other things, to "[i]mmediately end the categorical housing of transgender women in men's facilities without individualized safety assessments" and instead conduct individualized assessments "with a presumption of placement consistent with each woman's gender identity absent a documented and articulable security justification."  Dkt.45, at 27–28.

Defendants moved for reconsideration, Dkt.47, and to stay discovery pending resolution of the motion for reconsideration, Dkt.48.  The district court denied the stay motion.  Dkt.60.

On July 7, 2026, the court granted in part and denied in part defendants' motion for reconsideration.  Dkt.65, 66.  The court reiterated its central finding that "ODOC has a policy of presumptive placement in men's facilities" based on the total number of transgender women AICs housed in men's prisons.

Dkt.65, at 7. The court modified the terms of its mandatory injunction to clarify that: (1) the presumption of placement consistent with each AIC's gender identity "applies as a starting point," and (2) an AIC's preferences "may be taken into consideration" for any of the preliminary injunction's terms. Dkt.65, at 10. The court then issued an otherwise identical mandatory preliminary injunction that superseded the prior relief. Dkt.65, at 2; Dkt.66, at 2–3.

On July 23, 2026, the court held a status conference to discuss its orders, during which defendants requested a stay pending appeal of both the mandatory preliminary injunction and further district court proceedings, which the court denied. Dkt.67, 69. Separately during the hearing, the court construed plaintiffs' inquiry about discovery on the names of all transgender AICs in the state as an oral motion to compel, which defendants opposed; the next day, without briefing or a written opinion, the court ordered defendants to produce "discovery that personally identifies the transgender inmates in ODOC custody, which so far has been withheld or redacted by Defendants." Dkt.69.

## ARGUMENT

Defendants are entitled to a stay of the preliminary injunction pending appeal because they are likely to succeed on the merits of their appeal, they will be irreparably injured absent a stay, the issuance of the stay will not substantially injure the opposing party, and the public interest favors a stay. *See*

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009).  At bottom, a stay pending appeal here would "simply suspend[] judicial alteration of the status quo."  *Id.* at 429.  This Court should therefore grant a stay.

## I.      Defendants are likely to succeed on the merits of their appeal.

Defendants are likely to succeed on the merits of their appeal because the district court abused its discretion by issuing a mandatory preliminary injunction and provisionally certifying the class without any relevant evidence to support doing so.  Defendants address each issue in turn.

### A.      The district court abused its discretion by issuing a mandatory preliminary injunction.

The district court issued a mandatory preliminary injunction that provides class-wide relief based on a finding that ODOC has a "default presumption" of housing transgender women AICs in men's prisons.  That finding and the court's resulting injunction are flawed for at least three reasons: (1) the finding is clearly erroneous because it lacks any basis in the record; (2) the district court committed legal error by placing the burden of proof on defendants; and (3) the injunction's terms conflict with the Prison Litigation Reform Act ("PLRA") because they are vague and overbroad.

### 1. The district court clearly erred when it found that ODOC has a "default presumption" of housing transgender women AICs in men's prisons.

A district court cannot issue a mandatory preliminary injunction unless a plaintiff "establish[es] that the law and facts *clearly favor* her position, not simply that she is likely to succeed" on the merits of her claims. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). A factual finding is clearly erroneous when "the record contains no evidence to support it," *San Luis Obispo Coastkeeper v. County of San Luis Obispo*, 161 F.4th 590, 597 (9th Cir. 2025), and when "it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record," *Arc of Cal. v. Douglas*, 757 F.3d 975, 983–84 (9th Cir. 2014) (quotation marks omitted).

In moving for a preliminary injunction, plaintiffs asserted—without citation to any relevant evidence—that "ODOC's actual practice is to house transgender women by birth sex or genitalia, almost invariably in men's prisons." Dkt.15, at 11; *see also id.* at 40, 55. The district court found that the state has a "default presumption" of housing transgender women AICs in men's prisons and, based on that finding, concluded that the law and facts clearly favor plaintiffs' position as to their Eighth Amendment claim. *See, e.g.*, Dkt.45, at 20 (finding that "the current default housing for transgender women AICs is placement in men's facilities"); *id.* at 2–3 ("It is undisputed in the record before

the Court that this default presumption, and their overwhelming placement in men's prisons, has exposed transgender women inmates to a high risk of violence and sexual assault.").[2]

The district court's foundational finding was clearly erroneous because the record contained no evidence to support it. Rather, the record reflects that ODOC conducts individualized assessments to determine a transgender AIC's housing placement on a case-by-case basis. ODOC's policies—which plaintiffs quoted in their complaint—make clear that ODOC "shall provide housing assignments that reduce the likelihood of sexual abuse and sexual harassment." Dkt.1, at 14 & n.9. To that end, new AICs are assessed within 72 hours of arrival in ODOC custody and again within 30 days to determine whether they meet specific criteria indicating vulnerability, one of which is whether the AIC "is or is perceived to be . . . transgender, intersex, or gender nonconforming[.]" *Id.* Then, when deciding housing placements for transgender AICs—many of whom first identify as transgender long after entering ODOC custody—ODOC "consider[s] on a case-by-case basis whether a placement would ensure the

---

[2]     Although the district court's initial opinion and order also discussed plaintiffs' Fourteenth Amendment claim, the court acknowledged on reconsideration that it had not examined that claim under the requisite legal standard for a mandatory preliminary injunction—namely, whether the law and facts "*clearly favor*" plaintiffs' position. *Garcia*, 786 F.3d at 740; *see* Dkt.65, at 8; Dkt.45, at 21–24.

AIC's health and safety, and whether the placement would present management or security problems." *Id.* Importantly, a transgender AIC's "own views with respect to their own safety shall be given serious consideration" during this process. *Id.* And ODOC reviews housing placements for transgender AICs at least twice per year. *Id.*

In addition, in compliance with the Prison Rape Elimination Act ("PREA"), ODOC's policies and procedures seek to address and eliminate the risk of sexual abuse and harassment for all AICs. ODOC will designate an AIC as aggressive, and therefore likely to perpetrate sexual abuse, "if there are indications that they may be a sexually abusive AIC, or are prone to victimize other AICs, especially in regard to sexual behavior." *Id.* ODOC's initial screening considers an AIC's "prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse." *Id.* ODOC then uses that information to determine housing placements "with the goal of keeping separate those AICs at high risk of being sexually victimized from those at high risk of being sexually abusive." *Id.*

Defendants presented evidence that ODOC regularly conducts those individualized assessments. Dkt.27. New admits to ODOC who identify themselves as transgender, nonbinary, genderfluid, or intersex are "placed in the infirmary until the Committee can gather all necessary information to decide

placement," and current AICs who so identify "remain in their current facility until [ODOC's Transgender and Intersex Committee (TAIC)] reviews and makes a placement determination." *Id.* at 3.[3]  And contrary to plaintiffs' central argument, the evidence explicitly showed that "ODOC does not house by genital status; case-by-case determinations are made utilizing an objective screening process." *Id.*  Indeed, of the eight transgender women AICs housed at the state's women's prison, half have had no bottom gender-affirming surgery; one is unconfirmed; and three have had bottom gender-affirming surgery.  Dkt.29, at 2.

The record also contained evidence that ODOC has conducted individualized assessments for Plaintiff J.F. and the three declarants who submitted declarations in support of the request for injunctive relief.  *Id.* at 3–5.  ODOC cited specific safety concerns and the AICs' own preferences in denying their requests to transfer to the state's women's prison, Coffee Creek Correctional Facility ("CCCF").  *Id.*  Plaintiff J.F., for instance, was deemed ineligible for transfer due to safety concerns, as she is incarcerated for committing a sex offense against a non-verbal, disabled victim with physical limitations, having inserted an 11-inch plastic object into the victim's vagina,

---

[3]  TAIC is an interdisciplinary team dedicated to the care of transgender, intersex, and nonbinary AICs.  Dkt.27.

which lodged in the victim's abdomen and caused injuries that could have been fatal. *Id.* at 3. ODOC also noted that one of the declarants is, in fact, currently housed at CCCF. Dkt.27, at 4. In other words, the evidence in the record demonstrated that ODOC determines housing placements for transgender AICs on a case-by-case basis through individualized assessments—and not through a blanket policy or default presumption of placement in men's prisons.

Despite this evidence, the district court found that ODOC has a "default presumption" of housing transgender women AICs in men's prisons. In doing so, the court focused on statistics: that ODOC houses 117 transgender women AICs in its prisons, that 26 of those 117 women requested to be housed at CCCF, and that eight of those 26 women are currently housed at CCCF. *See* Dkt.27, at 3. The court found that, because "109 out of 117 transgender women are housed in a men's prison facility[,] . . . [t]he numbers overwhelmingly show that the current default presumption is that transgender women are housed in men's prisons, except in rare cases." Dkt.45, at 22. The court relied solely on that number to infer that ODOC has a default presumption. In other words, in finding that ODOC does not conduct a case-by-case analysis as required by ODOC policy, the district court looked only to an aggregate number.

That finding is clearly erroneous. Although the record contained ample evidence of ODOC's individualized assessments for housing transgender

women AICs, the district court inferred that those assessments must not be individualized—and that there is therefore a default presumption—because they result in most transgender women AICs being housed in men's prisons. For that inference to be valid, the court needed an evidentiary basis for why individualized determinations are unlikely to result in that outcome. But the court never identified such a basis. And in the absence of any evidence to support its inference, the court's factual finding is illogical and amounts to mere speculation. *See, e.g.*, *Gilbrook v. City of Westminster*, 177 F.3d 839, 871 (9th Cir. 1999) (noting that "an inference from lack of evidence would amount to no more than speculation"); *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007) ("An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." (simplified)); *cf.* Michael J. Saks, *Trial Outcomes and Demographics: Easy Assumptions Versus Hard Evidence*, 80 TEX. L. REV. 1877, 1883 (2002) (describing the ecological fallacy as "the error of thinking that relationships (or non-relationships) found at one level of aggregation will also be true at a different level").

The district court compounded its error on reconsideration. The court noted evidence in the record that one of the declarants "affirmatively requested to be housed at predominately male institutions." Dkt.65, at 7. But the court

declined to reconsider its finding that ODOC has a default housing presumption, reasoning that "[i]f Defendants had similar evidence that the 91 AICs at issue here made affirmative requests to be housed in men's facilities, the Court *assumes* they would have offered that evidence." *Id.* (emphasis added). That is, on reconsideration, the court inferred that those transgender women AICs must not have made affirmative transfer requests because defendants did not provide specific evidence as to each AIC. That burden of proof was not defendants' to bear. And the court's inference—based on a mere assumption—is both illogical and unsupported by the record. *See United States v. Barnes*, 895 F.3d 1194, 1199 (9th Cir. 2018) (explaining that a court cannot "substitute [its] assumptions for evidence in the record"); *cf. Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1257 (11th Cir. 2007) (describing the negative proof fallacy as "the mistake that is committed whenever it is argued that a proposition is true simply on the basis that it has not been proved false, or that it is false because it has not been proved true").

The district court also unreasonably stacked inferences to reach a conclusion unsupported by the evidence. It inferred that because Plaintiff J.F. "had conversations with staff about wanting a transfer to CCCF in 2019" but "did not request a transfer to CCCF until August of 2021," she therefore "did not know that she had to make a formal housing transfer request" during that

time.  Dkt.65, at 7–8.  And based on that intermediate inference, it "further infer[red] that other AICs could be similarly unaware of the process to formally request a housing transfer."  *Id.* at 8.  That ultimate inference is unreasonable, unsupported by the record, and amounts to an impermissible "pyramid of inferences."  *Shields v. United of Omaha Life Ins. Co.*, 50 F.4th 236, 245 (1st Cir. 2022) (citation omitted).

### 2.    The district court improperly placed the burden of proof on defendants.

It is well established that "[t]he party seeking a preliminary injunction bears the burden of proving each element."  *NetChoice, LLC v. Bonta*, 170 F.4th 744, 753 (9th Cir. 2026).  That is because injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).  And a plaintiff's burden is "doubly demanding" where, as here, she seeks a mandatory preliminary injunction, as "she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed."  *Garcia*, 786 F.3d at 740.

As a result, plaintiffs—not defendants—bore the burden of establishing that the law and facts clearly favor their position.  Defendants did not present individualized evidence to respect the privacy of transgender women AICs who had not made themselves a party to the litigation, as required by Oregon law.

*See* Or. Rev. Stat. 179.495 *et seq.* Yet, as discussed, the district court based its central finding on an assumption about evidence that defendants did not present. That was legal error. *See Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1108 (9th Cir. 2018) ("Whether the district court properly allocated the burden of proof is a conclusion of law reviewed de novo.").

> **3.** **The terms of the district court's mandatory preliminary injunction conflict with the PLRA because they are vague and overbroad.**

Under Federal Rule of Civil Procedure 65(d), a preliminary injunction order must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." That rule "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Melendres v. Skinner*, 113 F.4th 1126, 1139 (9th Cir. 2024) (quotation marks omitted). This Court will set aside injunctions when they are "so vague that they have no reasonably specific meaning." *Id.* at 1140 (quotation marks omitted).

Here, relying on its clearly erroneous factual finding, the district court ruled that "now, instead of the categorical default placement in a men's facility, the default will be to house the transgender inmate at CCCF or other alternative, safer housing." Dkt.45, at 29. The court then crafted preliminary injunction

terms that purported to reflect ODOC's existing policies. *See* Dkt.66, at 2–3; *see also* Dkt.45, at 2 (explaining that plaintiffs' "requested relief is very nearly the same system that ODOC purports to use already"). But the court did not simply order defendants to comply with their existing policies. Instead, the court impermissibly added terms that were either premised on its clearly erroneous factual finding or so vague and overbroad that defendants cannot definitively know whether they are complying with the mandatory preliminary injunction.

First, a primary term in the preliminary injunction is premised on the district court's clearly erroneous factual finding. The court ordered defendants to "[i]mmediately end the categorical housing of transgender women in men's facilities without individualized safety assessments." Dkt.66, at 2. But defendants demonstrated that no such practice exists, and plaintiffs offered no evidence to the contrary.

Conversely, the court ordered defendants to take actions that they already take. *See* Dkt.66, at 2–3. The record shows that defendants already conduct individualized assessments and take into consideration a variety of factors, including an AIC's gender identity, to determine housing placements (Term 1); provide safe, non-punitive housing options for transgender women (Term 2); ensure transgender women have access to appropriate showers and shower

schedules (Term 4); provide confidential and non-retaliatory reporting mechanisms for sexual misconduct (Term 6); provide mental health support for transgender women AICs who report sexual misconduct (Term 7); and consider an AIC's preferences (Term 8). *See, e.g.*, Dkt.1, at 14 n.9; Dkt.27; Dkt.28; Dkt.42. The court provided no guidance as to what, if anything, defendants need to change in those existing practices.

The court, moreover, included phrases so vague that defendants have no way of knowing whether they are complying with the preliminary injunction's terms except through trial and error while under threat of contempt. For instance, although defendants already prohibit housing vulnerable AICs with aggressive AICs, the court ordered defendants to prohibit housing transgender women with cisgender cellmates "known to have a history of sexual or serious physical violence." Dkt.66, at 2. The court does not explain what "serious" physical violence means, nor how defendants can assess whether past violence is sufficiently serious in the prison context, where most AICs have a history of violence. Other terms contain the same defects: the court requires separate showers or shower schedules that "provide *reasonable* bodily privacy"; mandates unclothed searches of transgender women AICs to be conducted by female staff "absent *extraordinary*, documented circumstances"; and permits AICs to "decline any of these protections with *informed, voluntary* consent after

a *meaningful review* of options." Dkt.66, at 2–3. None of these terms has a reasonably specific meaning. Indeed, this Court recently held that "reasonably necessary," "active resistance," and "legally justified" are impermissibly vague terms for an injunction. *Dickinson v. Trump*, 174 F.4th 634, 650 (9th Cir. 2026).

Several of the terms are also overbroad and improperly "require more of state officials than is necessary to assure their compliance with federal law." *Simon v. City & County of San Francisco*, 135 F.4th 784, 796 (9th Cir. 2025). For instance, the injunction requires female staff to conduct any unclothed search of transgender women AICs and prohibits cross-gender strip searches otherwise. Dkt.66, at 2. It also requires defendants to provide "voluntary transgender or gender non-conforming housing units within existing facilities." *Id.* In any event, ODOC's existing policies already address the concerns underlying those overbroad terms: ODOC prohibits housing potentially vulnerable AICs with potentially aggressive AICs (Terms 1, 2, and 3), and ODOC accommodates transgender women AICs' stated preference for their initial search during intake (Term 5). *See, e.g.*, Dkt.1, at 14 n.9; Dkt.27–28; Dkt.42.

Finally, the injunction is inconsistent with the PLRA. A federal court should generally defer to a state's management and administration of its

prisons. *See Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (explaining that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government"); *see also Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (noting that it is "difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons" (quotation marks omitted)). For that reason, the PLRA mandates that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Here, the injunction's vague and overbroad terms fail that admonition. At bottom, the district court is micromanaging the state's administration of its prison system, and this Court has made clear that district courts "may not micromanage prison administration" under the PLRA. *Porretti v. Dzurenda*, 11 F.4th 1037, 1051 (9th Cir. 2021); *cf. Valentine v. Collier*, 956 F.3d 797, 806 (5th Cir. 2020) (per curiam) ("[M]icromanagement, enforced upon threat of contempt, does not reflect the principles of comity commanded by the PLRA.").

**B.** **The district court necessarily abused its discretion by provisionally certifying the class.**

Defendants are also likely to prevail in their challenge to the district court's provisional class certification. Where a district court's provisional class certification "depended on, and was in service of," an infirm preliminary injunction, "the class certification order necessarily falls as well, regardless of whether class certification was otherwise proper under Federal Rule of Civil Procedure 23." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021). So too here, for the reasons explained above.

But even if this Court separately considers whether the district court's provisional class certification was proper, the district court abused its discretion. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc) (reviewing class certification for abuse of discretion and underlying factual questions for clear error). Here, the evidence in the record showed that ODOC houses transgender women AICs on a case-by-case basis after considering a variety of factors. Despite this evidence, the district court's Rule 23 analysis rested on the same clearly erroneous factual finding that ODOC has a default presumption for housing transgender women AICs in men's prisons. *See* Dkt.45, at 33–37; Dkt.65, at 7–8.

## II.    The remaining stay factors favor defendants.

The irreparable-injury and public-interest factors favor defendants.  *See Nken*, 556 U.S. at 435 (noting that the last two factors merge when the government is the opposing party).  This Court recently granted a stay pending appeal after concluding that the remaining stay factors favored the federal government because "uncertainty produced by the injunction—the violation of which would subject federal law enforcement officers to contempt—is intolerable."  *Reach Cmty. Dev. v. U.S. Dep't of Homeland Sec.*, 174 F.4th 1143, 1149 (9th Cir. 2026).  Here, too, defendants are subject to a vague and overbroad preliminary injunction and remain under threat of contempt.  And, as discussed in greater detail below, the district court ordered defendants to disclose all transgender AICs' confidential information—including their names and gender identities—to plaintiffs without those AICs' consent.  This Court should therefore grant a stay.

## III.   A stay of the district court proceedings pending appeal is also appropriate in this case.

Defendants submit that a stay of the district court proceedings is appropriate in this case.  A stay of district court proceedings pending appeal is appropriate where "[d]iscovery on a meritless claim would serve no other purpose than to cause parties and the court to expend resources unnecessarily."  *Reach Cmty. Dev.*, 174 F.4th at 1145.  This Court recently granted a stay of

district court proceedings pending appeal where the plaintiffs were unlikely to succeed on the merits of their claim and "the district court ha[d] suggested that even more extensive discovery is to come for both class certification and the merits." *Dickinson*, 174 F.4th at 650.

Here, even though there is no discovery schedule in place, the district court has already ordered defendants to produce confidential information about all transgender AICs. In its initial opinion and order, the court indicated that it "will schedule an evidentiary hearing to accept testimony from the parties, witnesses, and experts, to ensure that the relief that is implemented" from its mandatory preliminary injunction "continues to be narrowly tailored and properly tied to the harms of the violations at issue." Dkt.45, at 3, 27. Defendants later filed a motion to stay discovery after plaintiffs requested "unredacted, non-anonymized health, disciplinary, PREA complaint, and grievance information." Dkt.48, at 2–3. The court denied defendants' motion, finding that no good cause existed to stay discovery in light of the court's protective order. *See* Dkt.60. And when defendants moved to stay the district court proceedings pending appeal, the court not only denied defendants' motion but also interpreted plaintiffs' statements during the status conference as an oral motion to compel, granted it, and ordered defendants to produce "discovery that

personally identifies the transgender inmates in ODOC custody, which so far has been withheld or redacted by Defendants." Dkt.69.

Transgender AICs not involved in this litigation have not approved release of their confidential information—which includes their gender identity—to an outside party. Transgender AICs have a variety of reasons for why they may or may not want their gender identity to be known outside of TAIC while they are in custody. Even if those records were redacted, cumulative discovery about transgender AICs' personal information risks identifying those AICs as transgender. The ordered discovery implicates transgender AICs' privacy while threatening the state's safe and secure administration of its prisons. A stay is requested—and needed—to prevent the ringing of that bell.

**IV.  This Court should issue an administrative stay of the order and district court proceedings pending the resolution of this motion and expedite the briefing schedule and its consideration of this appeal.**

Defendants respectfully request that this Court issue an administrative stay of the preliminary injunction and district court proceedings pending the resolution of this motion. "An administrative stay is intended to 'minimize harm while an appellate court deliberates' and lasts 'no longer than necessary to make an intelligent decision on the motion for stay pending appeal.'" *Oregon v. Trump*, 154 F.4th 1161, 1164 (9th Cir. 2025) (quoting *United States v. Texas*,

144 S. Ct. 797, 798 (2024) (Barrett, J., concurring)).  An administrative stay does not constitute a decision on the merits of a motion for a stay pending appeal; it merely preserves the status quo until a court can consider the motion's merits.  *Id.*  Here, issuing an administrative stay of the district court's mandatory preliminary injunction and the district court proceedings will preserve the status quo until this Court resolves this motion.

Defendants also respectfully request expedited briefing and consideration for this appeal.  Under 18 U.S.C. § 3626(a)(2), the district court's preliminary injunction will "automatically expire on the date that is 90 days after its entry." The current preliminary injunction is slated to expire on October 5, 2026.

## CONCLUSION

The Court should stay the district court's order and the district court proceedings pending appeal and grant an immediate administrative stay pending resolution of this motion.  The Court should also expedite the briefing schedule and its consideration of this appeal.

Respectfully submitted,

DAN RAYFIELD  #064790
Attorney General
PAUL L. SMITH  #001870
Solicitor General
ROBERT A. KOCH  #072004
Attorney-in-Charge,
Civil & Administrative Appeals

25

/s/  Ariel T. Ashtamker

ARIEL T. ASHTAMKER  #260068
Assistant Attorney General
ariel.ashtamker@doj.oregon.gov

Attorneys for Defendants-Appellants
Mike Reese, Ryan LeGore, Jeremy
Wagner, Mark Nooth, Erin Reyes, and
State of Oregon

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7), Federal Rules of Appellate Procedure, I certify that the Appellees' Emergency Motion for Stay is proportionately spaced, has a typeface of 14 points or more and contains 5,188 words.

DATED:  July 31, 2026

/s/  Ariel T. Ashtamker
_____
ARIEL T. ASHTAMKER  #260068
Assistant Attorney General
ariel.ashtamker@doj.oregon.gov

Attorney for Defendants-Appellants
Mike Reese, Ryan LeGore, Jeremy
Wagner, Mark Nooth, Erin Reyes, and
State of Oregon

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I directed the Appellants' Emergency Motion for Stay to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ariel T. Ashtamker

ARIEL T. ASHTAMKER  #260068
Assistant Attorney General
ariel.ashtamker@doj.oregon.gov

Attorney for Defendants-Appellants
Mike Reese, Ryan LeGore, Jeremy
Wagner, Mark Nooth, Erin Reyes, and
State of Oregon

AA6:kw5/1028112139